IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 2:23-cr-20194-MSN

MYSHUN JEFFERSON,

    Defendant.

**ORDER ADOPTING REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS AND
DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant's Motion to Suppress (ECF No. 21, "Motion") filed November 13, 2023, which the undersigned referred for a report and recommendation that same day (ECF No. 22). The government responded in opposition on December 10, 2023 (ECF No. 28), and the Magistrate Judge held a hearing on December 19, 2023 (*see* ECF No. 29). On December 28, 2023, the Magistrate Judge entered her Report and Recommendation on Motion to Suppress (ECF No. 30, "Report"), recommending that the Motion be denied. Defendant filed objections to the Report on January 4, 2024 (ECF No. 31). The government filed a response to Defendant's objections on January 24, 2024 (ECF No. 33).[1]

---

[1] The government's response to Defendant's objections was filed six days late; however, it makes no new arguments, relying only on the arguments made in its response to the Motion. (*See* ECF No. 33 at PageID 102.)

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in forfeiture of those objections. Fed. R. Crim. P. 59(b)(2).[2]

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and

---

[2] Although the text of the Rule 59(b)(2) provides that a failure to object "waives a party's right to review," the Sixth Circuit has clarified that a failure to object is not a waiver, but a forfeiture. *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) ("We clarify that forfeiture, rather than waiver, is the relevant term here.") (explaining, "*Thomas v. Arn* held that 'the failure to file objections to the magistrate's report *waives* the right to appeal the district court's judgment,'" but *Arn* preceded the Supreme Court's clarification in *United States v. Olano*, 507 U.S. 725, 733 (1993).) The difference matters because forfeited issues may nevertheless be considered on appeal in certain circumstances. *Id.* (citing *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018)).

contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985).

## FINDINGS OF FACT

Neither party objected to the Report's proposed findings of fact. (*See* ECF No. 31 at PageID 91; ECF No. 32; ECF No. 33 at PageID 102.) The Court therefore **ADOPTS** the Report's proposed findings of fact in their entirety.

## CONCLUSIONS OF LAW

Defendant's objections to the Report's proposed conclusions of law generally rehash the arguments in his Motion that the Magistrate Judge already considered.[3] First, Defendant argues the affidavit failed to provide probable cause to issue a warrant because the affidavit (A) did not contain facts supporting a nexus between drug dealing and Defendant's residence (ECF No. 31 at PageID 91–96), and (B) contained stale information (*id.* at PageID 96–99). Second, Defendant

---

[3] Some portions of Defendant's objections are copied verbatim from his Motion. (*See* ECF No. 21 at PageID 34–35; ECF No. 31 at PageID 93–94.) And the Court further notes that those arguments (and others) were copied, nearly verbatim and <u>without citation</u>, from another report and recommendation authored by Judge Christoff, who wrote the Report in this matter. *See United States v. Edwards*, No. 2:22-cr-20105-MSN, 2023 WL 6588631, at *5–9 (July 12, 2023), *report and recommendation adopted* at 2023 WL 6367700 (Sept. 29, 2023). Nobody's perfect, and accidents happen; however, around these parts, such "literary theft" is generally frowned upon. *See Plagiarism*, Black's Law Dictionary (11th ed. 2019) ("The deliberate and knowing presentation of another person's original ideas or creative expressions as one's own; the wrongful appropriation of another's expression of ideas, or of the ideas themselves, by slight variation of expression; specif., <u>the act of stealing passages from someone else's compositions, either verbatim or in substance; literary theft</u> . . . ." (emphasis added).).

3

avers that the good faith exception in *United States v. Leon*, 468 U.S. 897 (1984), is inapplicable (*id.* at PageID 99–101).  The Court addresses each objection in turn below.

A.      **Probable Cause for the Warrant**

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"Probable cause is reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. O'Connor*, 723 F. App'x 302, 306 (6th Cir. 2018) (quoting *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)) (cleaned up).  To determine whether probable cause exists, a judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (cleaned up).  Put differently, for a search warrant to issue, an affidavit "must show a likelihood" of two things: (1) "that the items sought are seizable by virtue of being connected with criminal activity," and (2) "that the items will be found in the place to be searched." *O'Connor*, 723 F. App'x at 307 (cleaned up).  Defendant does not challenge the first requirement, only the second—often referred to as the "nexus requirement."  *See id.*; *United States v. Miller*, 850 F. App'x 370, 372 (6th Cir. 2021).

1.      Nexus

To satisfy the nexus requirement, there must be a "fair probability" that the location to be searched "will contain evidence of the illegal activity." *Miller*, 850 F. App'x at 372 (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).  "The connection between the

4

residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *Carpenter*, 360 F.3d at 595). The affidavit must "present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place." *Id.* (cleaned up). Determining "nexus is a fact-intensive question resolved by examining the totality of the circumstances." *Id.* (cleaned up).

Defendant's arguments that the affidavit fails to establish a nexus are without merit; they either misconstrue the caselaw or ignore the underlying facts.

First, Defendant argues that "the affidavit fails to allege the kind of ongoing drug activity sufficient to establish a nexus to search [Defendant's] home." (ECF No. 31 at PageID 92.) This objection appears to reference what the Sixth Circuit has sometimes referred to as "the continual-and-ongoing-operations theory," where it has "found a nexus between a defendant's residence and illegal drug activity <u>with no facts indicating that the defendant was dealing drugs from his residence.</u>" *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018) (emphasis added) (collecting cases). In those instances, "courts have drawn fine lines between cases with little to distinguish those that find probable cause from those that do not." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021) (cleaned up). "Critically, however, the issue is not as murky where there is a clear connection between the drug dealing and the residence." *United States v. Ward*, No. 22-1233, 2023 WL 370911, at *3 (6th Cir. Jan. 24, 2023). That clear connection is present here.

As explained in the Report, "there is substantial information in the affidavit that links the Baywood residence to drug trafficking," including the confidential source's ("CS") controlled purchase at the Baywood residence, subsequent surveillance during which officers observed interactions that were consistent with the CS's controlled purchase, and information from the CS

that they had been inside the Baywood residence for at least one previous purchase and had observed large amounts of narcotics therein.  (ECF No. 30 at PageID 80–83.)  The Sixth Circuit has repeatedly held there is a sufficient nexus when this type of "direct connection" to a defendant's home is present.  *See, e.g.*, *United States v. Ward*, No. 22-1233, 2023 WL 370911, at *3–4 (6th Cir. Jan. 24, 2023); *see also Reed*, 993 F.3d at 448 (explaining that the Sixth Circuit has "reconciled [its] caselaw in fact specific ways.  Most obviously, a court need not rely on a known drug dealer's status *alone* whenever other evidence (besides the dealer's living there) links drug dealing to the dealer's home," and collecting cases); *United States v. Jones*, 159 F.3d 969,  974 (6th Cir. 1998) ("Knowledge of illegal drug activities, obtained by law enforcement officials through a confidential informant and independent surveillance, supports a district court's finding of probable cause to support the issuance of a warrant.").

Defendant, however, argues that "a defendant's prior drug convictions and evidence of recent drug activity are not always sufficient to find probable cause to search a defendant's residence." (ECF No. 31 at PageID 92 (citing *United States v. Fitzgerald*, 754 F. App'x 351, 359 (6th Cir. 2018)).)  Defendant also cites *United States v. White*, 874 F.3d 490 (6th Cir. 2017), asserting that in *White*, "the Sixth Circuit <u>affirmed the district court's determination of no probable cause</u> to search a residence where the affidavit stated that the officers received an anonymous tip that the defendant sold drugs at that residence, officers conducted and recorded a controlled buy from the defendant in the driveway of the residence, a police dog alerted to the odor of narcotics in the defendant's vehicle, and the defendant had numerous prior drug possession convictions." (ECF No. 31 at PageID 92 (citing *Fitzgerald*, 754 F.3d at 359–60).)  Although Defendant did not place this language in quotation marks, the Court acknowledges this summary is a direct quote from *Fitzgerald* about the holding in *White*.  This Court, however, does not interpret *White* as

6

directly supporting such a proposition. In *White*, the government did not challenge the district court's ruling on probable cause, and the Sixth Circuit "proceeded to the good-faith inquiry, <u>assuming, without deciding</u>, that the affidavit failed to establish probable cause." *White*, 874 F.3d at 495–96 (cleaned up) (emphasis added).[4]

Continuing, Defendant similarly asserts that "[t]hough recent activity can help to establish a nexus, no court has found recent activity sufficient on its own," citing *United States v. Sheckles*, 996 F.3d 330, 342 (6th Cir. 2021); *United States v. Sumlin*, 956 F.3d 879, 886–87 (6th Cir. 2020); *United States v. Gunter*, 551 F.3d 472, 476, 481 (6th Cir. 2009); and *United States v. Miggins*, 302 F.3d 384, 388, 393–94 (6th Cir. 2002). (*See* ECF No. 31 at PageID 94.) Again, this argument was made in the Motion, (*see* ECF No. 21 at PageID 35), which copied it verbatim from *Edwards*, 2023 WL 6588631, at *7.[5] The bigger issue, however, is that Defendant ignores key differences between his case and *Edwards*; specifically, in *Edwards*, Judge Christoff concluded that "because none of [the defendant's] drug activity . . . [was] associated with his home, his drug activity cannot suffice to establish nexus." *Id.* In contrast, as explained above, Defendant's drug activity was connected to his home; the reasoning of *Edwards* is not applicable.

For the reasons set forth above, the affidavit establishes a nexus between Defendant's drug dealing and his Baywood residence. His objections arguing that nexus is lacking are **OVERRULED**.

---

[4] The Sixth Circuit held that the good faith exception applied and affirmed the district court's decision denying the motion to suppress. *White*, 874 F.3d 506 (noting that its conclusion was "only bolstered by the fact that this court has found probable cause in similar, though not identical affidavits," and citing *Jones*, 159 F.3d at 974–75 and *United States v. Smith*, 783 F.2d 648, 649–51 (6th Cir. 1986)).

[5] *See supra* n. 3, p. 3.

7

2. Staleness

Second, Defendant argues that the affidavit contains stale information—specifically the first controlled buy at the Baywood residence. (ECF No. 31 at PageID 96–99.) "Probable cause cannot be supported by stale information." *United States v. Pointer*, No. 22-1082, 2022 WL 17820539, at *6 (6th Cir. Dec. 20, 2022) (citing *United State v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). "The staleness inquiry depends on the 'inherent nature of the crime.'" *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting *Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). Relevant here, the crime of selling drugs out of a residence

> exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den. The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the "drug den" end of the continuum.

*United States v. Hython*, 443 F.3d 554, 485 (6th Cir. 2006). Thus, "[t]he passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *Id.* The Sixth Circuit has set forth the following factors (the "*Spikes* factors") for courts to consider when analyzing staleness:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
>
> (2) the criminal (nomadic or entrenched?),
>
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006) (cleaned up).

After conducting a *de novo* review, this Court agrees with the Report's conclusion that the criminal activity described in the affidavit is closer to the "drug den" end of the spectrum. (*See* ECF No. 30 at PageID 84 (citing *Hython*, 442 F.3d at 485).) The drug sales were "an ongoing and continuous crime," in which the Baywood residence was used as "a secure optional base." *Hython*, 443 F.3d at 485. Further, for the reasons set forth in the Report, the *Spikes* factors also weigh against a finding of staleness. (*See* ECF No. 30 at PageID 86.) The passage of time after the first controlled buy does not render it stale considering the totality of the circumstances.

Defendant, however, contends that the Magistrate Judge erred in concluding that the first controlled purchase at the Baywood residence was not stale because "much of the other information in the warrant did not even relate to [Defendant]." (ECF No. 31 at PageID 97.) However, "search warrants are directed at places, not people." *Miller*, 850 F. App'x at 374 (cleaned up). Surveillance of suspected drug activity at the Baywood residence is relevant to the probable cause determination, even if Defendant was not observed participating in those activities. *See United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) ("Even if each of these additional items would not suffice to establish probable cause on its own, each factual allegation—whether ultimately deficient or not—is still a relevant data point in the 'totality of the circumstances' constellation, rather than an independent thing to be lined up and shot down one by one.").

Moreover, the surveillance at the Baywood residence and second controlled buy at the Powell address corroborate information from the CS that is relevant to the probable cause analysis. *See United States v. Hines*, 885 F.3d 919, 925 (6th Cir. 2018) ("And if 'an informant is right about some things, he is more probably right about other facts' regarding the suspect's illegal activity.") (quoting *Gates*, 462 U.S. at 244). Specifically, the affidavit states that the CS had been inside the Baywood and Powell residences for at least one previous drug transaction and "observed large

amounts of various narcotics," making it more likely that Defendant was engaged in ongoing drug distribution, not just the occasional sale to acquaintances from his personal supply. Defendant resists this conclusion, arguing that the second controlled buy at the Powell address "support[s] an inference that [Defendant] referred the CS to another because he had no supply and was not engaged in protracted and continuous drug trafficking from the Baywood residence." (ECF No. 31 at PageID 97.) To make such an inference, however, would require this Court to ignore the other information in the affidavit, which this Court may not do; "the totality of the circumstances requires courts to consider the whole picture." *District of Columbia v. Wesby*, 583 U.S. 48, 60 (2018).

Defendant also disagrees with the Magistrate Judge's conclusion that, even if the first controlled buy was stale information, the second controlled buy at the Powell address refreshed the earlier controlled purchase. Defendant attempts to distinguish one of the supporting cases cited in the Report, *United States v. Pointer*, No. 22-1082, 2022 WL 17820539, at *5 (6th Cir. Dec. 20, 2022), by arguing that the affidavit here "contained no information suggestive of . . . an ongoing conspiracy." (*See* ECF No. 31 at PageID 99; *id.* at 98 ("there was no information suggesting a conspiracy presented in the affidavit in this case").) Defendant then lists examples of information not included in the affidavit. (*See* ECF No. 31 at PageID 99.)

*Pointer*'s holding on staleness, however, was not dependent on the existence of a conspiracy—what mattered was that the recent information indicated the defendants' "drug operation was ongoing and continuous." *Pointer*, 2022 WL 17820539, at *7. Defendant's focus on what is not in the affidavit is also misplaced; courts must "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain." *Christian*, 925 F.3d at 312. Considering the information in the affidavit as a whole, it indicates that Defendant's criminal

10

activities were "ongoing and continuous," and the first controlled buy at the Baywood residence is properly considered when assessing whether the affidavit established probable cause to search the Baywood residence. *See United States v. Davison*, 766 F. App'x 232, 238 (6th Cir. 2019) (controlled buy that occurred more than a month before warrant was sought was not stale because last controlled buy occurred the day before the warrant was sought; earlier controlled buy helped establish residence was involved in an ongoing drug-trafficking enterprise).

For the reasons set forth above, Defendant's objections arguing that the affidavit relied on stale information are **OVERRULED**.

B.     **Good Faith Exception**

Even if the affidavit fell short of establishing probable cause, suppression would be inappropriate because the evidence was seized in good-faith reliance on the search warrant. *See United States v. Leon*, 468 U.S. 897, 905 (1984).

Generally, evidence seized during an unconstitutional search should be excluded. *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). When police obtain a warrant from a neutral judge, however, the Supreme Court has held that the exclusionary rule should generally *not* apply because exclusion "seeks to deter police (not judicial) misconduct." *Reed*, 993 F.3d at 450. Under this exception—dubbed the "good faith exception"—exclusion is not required if the evidence was "obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). The good faith exception does not apply, however, in at least four scenarios:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;
>
> (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police;

>
> (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Lewis*, 81 F.4th 640, 647 (6th Cir. 2023) (cleaned up). Defendant asserts that the third scenario is applicable here, (*see* ECF No. 31 at PageID 100–01),[6] the so-called "bare bones" affidavit.

A bare bones affidavit is "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant." *White*, 874 F.3d at 496. It "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Lewis*, 81 F.4th at 648 (cleaned up). On the other hand, an affidavit is not bare bones if "it contains a minimally sufficient nexus between the illegal activity and the place to be searched." *White*, 874 F.3d at 496–97 (cleaned up). If an affidavit shows "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched, then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* at 497 (cleaned up).

The affidavit for the Baywood residence search warrant is dated June 10, 2023, and states that investigators met with a CS in May 2023, who told them that Defendant was a local supplier of fentanyl and Defendant could provide more than 0.5 grams on request. The CS told investigators that Defendant sold the fentanyl out of two residences—2846 Baywood and 3176

---

[6] Defendant does not specifically state which scenario is applicable, nor does he refer to the affidavit as "bare bones"; however, he argues the information in the affidavit did not establish a "minimally sufficient nexus," (*see* ECF No. 31 at PageID 101), which is the standard courts use to determine whether an affidavit is "bare bones," *see, e.g.*, *Reed*, 993 F.3d at 450 (an "affidavit will avoid the bare-bones label so long as it identifies a 'minimally sufficient' nexus").

12

Powell St—with the transaction typically taking place outside the residence. The CS told investigators that they had also been inside both residences at least once for prior transactions and had observed large amounts of various narcotics at each. The investigators then had the CS participate in two controlled buys and monitored the CS throughout both operations. The first occurred at the Baywood residence the day after investigators first met with the CS, and Defendant sold the CS approximately 7.2 grams of a substance that later tested presumptively positive for fentanyl. The second occurred at the Powell address within five days before the affidavit, with the CS purchasing 7.1 grams of a substance that later tested presumptively positive for fentanyl. Although Defendant was not present at the second controlled buy, the buy occurred after the CS called Defendant and asked to purchase fentanyl; Defendant agreed and directed the CS to go to "Powell" for the transaction. Defendant did not give the CS a specific address, but the CS told investigators that they knew the "Powell" address because they had purchased fentanyl from Defendant there "numerous times in the past." And the controlled buy in fact occurred at the 3176 Powell St address the CS had previously provided to investigators. Investigators also conducted several days of surveillance at the Baywood address, which the affidavit stated was the "known residence" of Defendant. During that surveillance, the investigators observed several transactions in which vehicles parked on the street in front of the Baywood house, and then different males exited the house and met the occupants of the vehicles. These transactions were consistent with the prior drug transactions the CS described participating in, as well as the two controlled buys conducted with the CS. During the surveillance, an individual matching Defendant's description was seen exiting and returning to the Baywood residence with the other males observed engaging in the transactions with cars parked in front of the Baywood residence. The individual matching Defendant's description left and returned to the Baywood residence with the other males in an

orange Dodge Challenger with temporary tags that was present at the Baywood residence during the first controlled buy.

Considered as a whole, the affidavit establishes, at least, the "minimally sufficient nexus" between Defendant's drug activity and the Baywood residence. *See White*, 874 F.3d at 497–98 (explaining that "the controlled buy from defendant on the premises . . . corroborat[ed] key components of the informant's tip," including "that defendant was personally distributing the specific kind of narcotic (marijuana) at the specific location (the premises of 196 Turner Lane) alleged by the informant," and therefore, the "affidavit provided a concrete factual link between defendant, his criminal activity, and the residence."). Therefore, even assuming that the affidavit's information was insufficient for probable cause, the good faith exception applies. *Cf. Ward*, 967 F.3d at 555 (declining to apply good faith exception, explaining "we have neither a tip alleging that Ward sold drugs from his home, a controlled buy at Ward's residence, evidence of numerous drug convictions, nor the prompt action by law enforcement"); *Brown*, 828 F.3d at 382–86 (finding no nexus and declining to apply good faith exception where the "affidavit contained no evidence that Brown distributed narcotics from his home," "that any suspicious activity had taken place there," "that a reliable confidential informant had purchased drugs there," or "that the police had ever conducted surveillance at Brown's home"); *Hython*, 443 F.3d at 486 (single, undated controlled purchase where confidential informant used an unidentified female as an intermediary to make controlled buy was insufficient for good faith exception); *Laughton*, 409 F.3d at 750–51 (declining to apply good faith exception because affidavit did not provide connection between criminal activity and place to be searched because it did not specify, among other things, where confidential informant's "multiple purchases of methamphetamine" were made, nor the address of the residence where confidential informant observed controlled substances).

A review of Sixth Circuit cases in which the court found probable cause reinforces this conclusion. *White*, 874 F.3d at 499. In *White*, the Sixth Circuit reasoned that:

> In *United States v. Smith*, 783 F.2d 648, 649 (6th Cir. 1986), the affiant "received information from a reliable informant that Eric Helton was producing marijuana at his residence." Acting on that tip, the affiant went to the location and "observed a marijuana plant growing beside the residence." *Id.* The defendant, an occupant of the house, moved to invalidate the search warrant for the residence. We agreed that "[t]he informant's tip alone would not have been sufficient," but concluded that the affidavit, "[t]hough sketchy," established probable cause because "the investigation of the tip did corroborate what [the affiant] had been told." *Id.* at 650–51. Even granting defendant the reasonable assumption that *Smith*'s "sketchy" affidavit represents the irreducible minimum of probable cause, no officer would suspect that an affidavit based on a similar tip but containing more probative corroboration—observation of actual drug distribution, past drug offenses, and a factual connection to the residence—was somehow so lacking in indicia of probable cause that he could not reasonably rely on it.

*Id.*

So, too, here. *See also United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) (finding probable cause where "a confidential informant had observed someone come out of Ellison's residence, engage in a drug transaction, and then return into the residence"); *United States v. Houser*, 752 F. App'x 223, 224–26 (6th Cir. 2018) ("[T]he warrant affidavit averred that officers witnessed Houser leave from and then return to his apartment immediately before and after selling crack cocaine, thus establishing a sufficient nexus to search the residence.").

For the reasons set forth above, even assuming the affidavit did not establish probable cause, it at least contained "a minimally sufficient nexus" between Defendant's drug activities and his Baywood residence, and the good faith exception applies. Defendant's objections are **OVERRULED**.

15

## CONCLUSION

The Court has conducted a *de novo* review of the record and concludes that Defendant's objections are without merit and are therefore **OVERRULED**. The Court **ADOPTS** the Report's findings of fact and conclusions of law and **DENIES** Defendant's Motion to Suppress (ECF No. 21).

**IT IS SO ORDERED**, this 14th day of February, 2024.

                                                _____
                                                MARK S. NORRIS
                                                UNITED STATES DISTRICT JUDGE